No. 10,849.

.SUCCESSION OF JACOB SCHWENCK, MRS. WILHELMINA C. RAUSCHKOLB,
    WIDOW AND NATURAL TUTRIX, VS. J. O. ROSENSTREAM, DATIVE
    TUTOR.

1. The judgment of the District Court on the provisional account is fully sustained
   by the evidence.
2. The evidence entirely rebuts and disproves the charge of undue influence as a
   ground for annulling the decedent's will.
3. Debts due by the deceased husband as head of the community of acquets and
   gains by a first marriage, and paid out of the earnings of the community under
   a second marriage, must, in a settlement between them, be charged to the first
   and credited to the second community.
4. The evidence sustains the adjustment made by the judge of the accounts be-
   tween the two communities.
5. The allowance made for the revenues of the separate property of the minors,
   making no deduction for their expenses, is, at least, as much as they are en-
   titled to. The question as to whether their expenses should be deducted is re-
   ferred to, but appellee asks no amendment.

APPEAL from the Civil District Court for the Parish of Orleans.
    *King, J.*

*Henry P. Dart* for the Executrix, Appellee.

*James B. Rosser, Jr.,* for Defendant and Appellant.

The opinion of the court was delivered by

FENNER, J.  Jacob Schwenck was married thrice.  His first wife
died without children, and that marriage may be eliminated in this
·case.

He then married Christina Seibel, who died in January, 1880,
leaving three children, issue of the marriage, who are represented by
P. O. Rosenstream as their dative tutor.

In February, 1882, Schwenck married Wilhelmina C. Rauschkolb,
by whom he left two children.  He died on January 22, 1889, leav-
ing a nuncupative will, executed on his death bed, by which he con-
stituted his wife his sole executrix, gave her the usufruct of all of
his property and the whole disposable portion in full ownership.

This record presents three contests, which, though originally dis-
tinct suits, were covered by one judgment, and are practically con-
.solidated.  These are:

(1) An action by the minor children of the decedent's previous marriage to annul his will; (2), an opposition on their behalf to the provisional account filed by the widow and testamentary executrix of said will; and (3), a partition suit instituted against the minors of the previous marriage by the said second wife individually, and as executrix and tutrix of the two minor children, issue of her marriage with decedent.

### I.

In the suit to annul the will, several grounds were urged, all of which are abandoned in this court except one, viz.: a charge of undue influence exercised over the mind of the testator by Charles L. Rauschkolb, a brother to the wife, who was present in the room and one of the witnesses to the will. This may be disposed of very briefly. Waiving all questions of law, the evidence in the case, of witnesses introduced by the assailant of the will in his own behalf, conclusively negatives and annihilates the charge.

### II.

All the grounds of opposition to the account of the executrix are abandoned except to three items of bills put on the account as paid by her, and which opponent claims are not proved. We have examined the testimony, and find them fully proved.

### III.

Without undertaking a tedious statement of all the complicated issues involved in the partition suit, we shall confine ourselves to disposing of the particular objections to the judgment below, which are urged by appellant in this court.

The most important questions arise in the settlement of the accounts between the first and second community. The widow claims that the first community was, at the date of its dissolution, insolvent, and owed a large amount of debts, which were paid after the origin of the second community, and out of the earnings thereof. This is strongly disputed by the tutor of the minors of the first community. It appears that the decedent's business, before and after his last marriage, was the keeping of a bar-room and restaurant, which was his only source of income. The tutor shows that business was at least as profitable, and probably more profitable, before than after his second marriage, and he suggests the intrinsic

improbability that the business should have left the decedent insol-
vent and largely in debt at the date of his last marriage, while the
same business, in the years between that and his death, enabled him
to pay off all these debts, and besides, to make considerable outside
investments. .

Impressed with this suggestion, we have made a very critical ex-
amination of the evidence in the case, but we can find nothing to
justify us in disturbing the finding of the District Judge, who sus-
tained the contention of the widow.

It is incontestably proved that the decedent did owe large debts at
the date of his last marriage, and there is not a word of evidence to
show or indicate that he had any funds on hand with which to pay
them, or any property than that which remained at his death, and
which was partly encumbered by the debts referred to. These debts
were undoubtedly paid off during the last marriage, and in absence
of any evidence to the contrary, as well as in proper consideration
of positive evidence to that effect, we are bound to hold, as did the
District Judge, that the payments were made with community funds.

Neither the widow nor the court was bound to explain what be-
came of the earnings of the prosperous business conducted by
Schwenck prior to his last marriage. It is very certain that they did
not prevent him from incurring large debts.

Nor are the accumulations from the business during the last com-
munity, employed in paying off prior debts and in some investments
of no great amount, intrinsically improbable or unreasonable.

The business during the existence of this community, extending
over a period of seven years, is proved to have been profitable,
averaging a gross income of about $35 *per* day or nearly $13,000 *per
annum*. It was closely and economically managed, with the active
co-operation of the wife, who was an intelligent and hard working
woman, and the net profits were large. If the net results were so
much more favorable after, than prior to, the marriage, it will not
be the first time that the assistance of an intelligent, industrious and
saving wife, especially in that rank of life, has changed the financial
condition of the husband from one of embarrassment to one of pros-
perity.

Appellant further disputes the proof of payment as to several
items, viz.:

1. The Bultman debt. This debt was evidenced by a mortgage

note for $6000, and had been contracted prior to the last marriage. It had not been paid at the date of the marriage. It was paid off during the marriage. The only question is as to the amount paid during the marriage. The books of Jacob Schwenck, kept in his own handwriting, show the dates and amounts of the various payments, running from May 31, 1882, to July 6, 1886, when the final payment was made. A. F. Bultman, the son of Mrs. Bultman, who held the note, attended to these collections from a certain period in 1884, and he renders an account of payments made, beginning November 19, 1884, which substantially corresponds with Schwenck's books. The prior payments had been made to Mrs. Bultman, who kept no *memorandum* of them, and could throw no light on the dates and amounts of payments. The presumption is overwhelming that Schwenck's entries are correct, and it is confirmed by all the evidence. We pay no attention to the trifling inconsistencies in Bultman's evidence, much dwelt on by appellant. They amount to nothing. His own statement shows that he knew nothing about payments prior to 1884, and his reference to them in his testimony obviously arose from a mere confusion as to dates.

2. The Dutrey debt. It is clearly shown that the debt existed and was paid in 1884. It was evidenced by a note for $500, which had been destroyed, and nobody could prove its date. But the holder accepted the face of the note without interest, and Schwenck told his wife at the time that he was glad enough to get that, as the note was prescribed. Of course, if there was any question as to prescription, the date must have been prior to the marriage. We are satisfied, besides, that if the debt had been contracted during the marriage, Mrs. Schwenck would have known it.

3. The debt due to the mother of Schwenck. He undoubtedly owed her the full amount claimed as capital at the date of the last marriage. The debt has been satisfied in principal and interest. Although the mother's recollection of the actual amount paid is confused, she does not dispute that she accepted the payments in full settlement of the debt, and proclaims her perfect confidence in the integrity of her son. A memorandum book is produced, in Schwenck's handwriting, showing dates and amounts of expenditures for her account, and payments made, which went to the extinguishment of the debt.

We will not waste further time in discussing evidence as to other

items. We consider that all allowed by the judge are satisfactorily proved. We consider that appellant has no cause to complain of the allowance made by the judge for the revenues of the separate property of the minors, without any deduction on account of their expenses. Had appellee claimed an amendment in this matter, grave questions would have been presented. See Handy vs. Parkison, 10 An. 98; Mercier vs. Canonge, 12 Rob. 385.

The case of the Succession of Applegate, 39 An. 403, refers to the last quoted case, and differences the case then before us in particulars which do not exist in this case.

On the whole, we think justice has been done.

Judgment affirmed.